# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00460-SCT

*ATTORNEY GENERAL, MIKE MOORE, EX REL., THE CITY OF ABERDEEN, MISSISSIPPI, AND THE MISSISSIPPI ETHICS COMMISSION*

*v.*

*RALPH THOMAS BYARS AND UNITED STATES FIDELITY AND GUARANTY COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/1999 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: EUGENE CARROLL STONE, III |
| ATTORNEYS FOR APPELLEES: | TAYLOR B. SMITH |
| | JEFFREY JOHNSON TURNAGE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 03/30/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/20/2000 |

**BEFORE PRATHER, C.J., BANKS, P.J., AND McRAE, J.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This is a case arising under Mississippi's ethics in government laws. The Attorney General brought this civil action in the Monroe County Circuit Court on behalf of the City of Aberdeen, Mississippi and the Mississippi Ethics Commission (collectively the State) against Ralph Byars, the City Manager for Aberdeen, Mississippi, and the surety on his public officials bond, United States Fidelity and Guaranty Company (USF&G). Byars was charged with having violated Miss. Code Ann. §§ 25-4-105(1), 25-4-105(3)(a), & 25-4-105(5)(1999). The trial court granted Byars's and USF&G's motions to dismiss all of the claims against them. On appeal, we affirm the dismissal of one of the counts, but we reverse and remand as to two of the counts. We find that the failure to specify damages was not a bar to recovery and that the dismissal via a [Rule 12(b)(6)](#) motion was error because the court never reached the question of whether Byars used his official position to obtain a pecuniary benefit for himself.

**I.**

¶2. According to the complaint, in 1986, Byars purchased an old house in downtown Aberdeen which he tried, unsuccessfully, to sell. In 1995, Byars entered into a lease-purchase arrangement with Chester Layne, D.D.S. who planned to use the building to house his new dental office. The ethics charges against Byars arose from the fact that Layne was given two Urban Development Action Grant (UDAG) loans ($35,000 and $25,000) by the City of Aberdeen with which to set up his practice. The complaint alleges that Byars handled all of the loan documents for the City's Board of Aldermen and that Byars was aware that Dr. Layne was less than honest in his application for the loan. Specifically, the complaint alleges, in pertinent part:

> 16. Defendant Byars handled all of the loan documents on behalf of the City of Aberdeen. On May 22, 1995, six days after the Board of Aldermen for the City of Aberdeen approved the loan, Defendant Byars wrote a note to the city comptroller requesting a release of $2000.00 of the $35,000.00 loan so that Dr. Layne could obtain a certificate to practice dentistry in Mississippi. Exhibit H.

> 17. On the following day, May 23, 1995, Defendant Byars wrote a note to the city attorney advising him that the loan to Dr. Layne was to be closed on May 31, 1995. In fact, the city closed the loan with Dr. Layne on May 31, 1995. Exhibit I.

> 18. On the same day that the city closed the loan with Dr. Layne, May 31, 1995, Defendant Byars entered into a lease-purchase agreement with Dr. Layne for the lease purchase of the Defendant's house at 808 South Chestnut. Under the terms of the lease-purchase agreement, Dr. Layne agreed to pay Defendant Byars $771.82 per month, financed by Defendant Byars at the rate of 8% interest with an agreed purchase price of $100,000. Exhibit J.

¶3. The complaint alleged that Dr. Layne lied to the Board of Aldermen with regard to several matters. For instance, according to the complaint, Layne listed items of dental equipment to be used as collateral for the loan. "This list was simply a list of equipment that Dr. Layne hoped to purchase from the dental supply company. Not only did Dr. Layne not own this equipment, but the equipment had not even been delivered to Aberdeen." When the Board of Aldermen met and voted to approve the loan, Byars knew that Layne did not own any dental equipment that could secure the loan.

¶4. Byars moved to dismiss the charges on several grounds including the fact that "[t]he Complaint fails to allege that Plaintiff was directly injured or otherwise damaged by the alleged conduct of Byars" and that Byars was not a member of the governing body of the City of Aberdeen and, thus, there could be no violation of § 25-4-105(3)(a). USF&G also moved to dismiss the complaint.

¶5. The trial court granted the defendants' Miss. R. Civ. P. 12(b)(6) motions, finding as follows: (1) that the State failed to allege damages in its complaint; (2) that the State failed to allege that Byars was a contractor, subcontractor or vendor with the City of Aberdeen; (3) that the State failed to allege that Byars used any information gained in the course of his employment which resulted in a pecuniary benefit to him under the Ethics in Government Laws; and (4) that the bond issued by the USF&G insured Byars only in his capacity as Utilities Manager and not as City Manager and, accordingly, the bond was not applicable.

¶6. The State has appealed raising the following issues:

> 1. The trial court erred in holding that the plaintiffs failed to allege damages in their complaint under the

Ethics in Government Laws.

2. The trial court erred in holding that plaintiffs' failure to allege that defendant Byars was a contractor, subcontractor, or vendor with the City of Aberdeen failed to state a cause of action under the Ethics in Government Laws.

3. The trial court erred in finding that the plaintiffs have failed to allege that the Defendant (Byars) used any information gained in the course of his employment which resulted in a pecuniary benefit to him under the Ethics in Government Laws.

4. The trial court erred in holding that the bond issued by the Defendant (USF&G) is not applicable to defendant Byars as City Manager.

5. The trial court erred in applying the standard of review.

## II.

¶7. As a preliminary matter, Byars argues that the State is procedurally barred from raising these issues on appeal because it failed to file a written response to Byars's and USF&G's motions to dismiss. We have already held in ***Foster v. Noel***, 715 So.2d 174, 180 (Miss. 1998), that Miss. R. Civ. P. 56(e) "does not require a party to file a formal response to a motion for summary judgment." If a formal response is not required to contest a motion for summary judgment, there is even less reason to require one in response to a motion to dismiss where the court may examine only the complaint itself in determining whether to grant or deny the motion. Thus, we reject Byars's argument in this regard.

## III.

### A.

¶8. In reviewing the decision of a trial court to dismiss on a Rule 12(b)(6) motion, this Court must take the well-pleaded allegations of the complaint as true. ***Overstreet v. Merlos***, 570 So.2d 1196, 1197 (Miss. 1990). The court should not grant the motion unless it appears beyond any reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. ***Newell v. Jones County***, 731 So.2d 580, 581 (Miss. 1999); ***McFadden v. State***, 542 So.2d 871, 874-75 (Miss.1989); ***Grantham v. Mississippi Dep't of Corrections***, 522 So.2d 219, 221 (Miss.1988); ***Lester Eng'g Co. v. Richland Water & Sewer Dist.***, 504 So.2d 1185, 1187 (Miss.1987).

### B.

¶9. The issue of damages is easily decided since our decision in ***Hinds Community College Dist. v. Muse***, 725 So.2d 207, 210-12 (Miss. 1998) in which we held that the damage required to be shown in ethics cases does not have to be pecuniary. The injury is the damage to the public trust and this injury occurs even where the government has received full value for any money spent. That the City of Aberdeen may have suffered no financial loss from the alleged activities of its city manager matters not. As ***Hinds Community College Dist.*** makes clear, the damage is in what the self-dealing does to the public trust. To

the extent that the trial court dismissed the case on the failure of the complaint to specify damages, the dismissal was in error.

## C.

¶10. The second issue is whether the State's failure to allege that Byars was a contractor, subcontractor, or vendor with the City of Aberdeen was fatal to its complaint.

¶11. Miss. Code Ann. § 25-4-105(3)(a) provides as follows:

(3) No public servant shall:

(a) Be a contractor, subcontractor or vendor with the governmental entity of which he is a member, officer, employee or agent, other than in his contract of employment, **or have a material financial interest in any business which is a contractor, subcontractor or vendor** with the governmental entity of which he is a member, officer, employee or agent.

Miss. Code Ann. § 25-4-105(3)(a)(1999) (emphasis added).

¶12. The State argues that § 25-4-105(3)(a) contains two proscriptions: the first forbids public servants from acting as contractors, etc. with the governmental entity. The second forbids the public servant from having a "material interest in any business which is a contractor, subcontractor, or vendor with the governmental entity of which he is a member, employee or agent."

¶13. The State is correct in that the statute contains two separate restrictions. Since Byars is obviously not a "a contractor, subcontractor or vendor with the entity", the question remains as to whether Byars has a material financial interest in any business which is a contractor, subcontractor or vendor with the governmental entity of which he is a member, officer, employee or agent. To answer this question, we must first examine whether Dr. Layne's business is a "contractor, subcontractor or vendor" with the City of Aberdeen.

¶14. The ethics in government statute defines contract but fails to supply a definition of contractor. See Miss. Code Ann. § 25-4-103(f)(1999). The American Heritage Dictionary, 3rd Ed., defines contractor as "one who agrees to perform services at a specified price, esp. for construction work." According to Webster's Third International New Dictionary 495 (1961), a contractor is "one that contracts, a party to a bargain, one that formally undertakes to do so something for another," or as "one who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans." Similarly, Black's Law Dictionary describes the term "contractor" as "strictly applicable to any person who enters into a contract, but ... commonly reserved to designate one who, for a fixed price, undertakes to procure the performance of works or services on a large scale ... generally classified as general contractors (responsible for entire job) and subcontractors (responsible for only a portion of job; e.g., plumber, carpenter)." Black's Law Dictionary 295 (5th ed.1979).

¶15. Where the legislature has not defined a term within the statutory scheme, we look to the term's common and generally accepted meaning. See *Corry v. State*, 710 So.2d 853, 861 (Miss. 1998); *Buelow v. Kemp Co.*, 641 So.2d 1226, 1228-29 (Miss. 1994); *Caldwell & Gregory, Inc. v. University of S. Miss.*, 716 So.2d 1120, 1123 (Miss. Ct. App. 1998). The term contractor is generally

used in the strict sense of one who contracts to perform a service for another and not in the broad sense of one who is a party to a contract. Thus, while Dr. Layne has a contract in the form of a loan with the City of Aberdeen, Dr. Layne is a not a contractor as that term is meant in Miss. Code Ann. § 25-4-105(3)(a). That count against Byars should have been dismissed.

## D.

¶16. Notwithstanding the fact that the State may not have a case against Byars under § 25-4-105(3)(a), this does not require dismissal of the State's complaint. The State, as noted above, alleged three causes of action in its complaint, one of which is that Byars,

> as a public servant . . . violated Miss. Code Ann. § 25-5-105(1) in that he used his official position as City Manager for the City of Aberdeen, Mississippi, to obtain pecuniary benefit for himself by arranging a loan from the City of Aberdeen to Dr. Chester Layne . . . . 1) the renovation and improvement of property owned by Defendant Byars at 808 S. Chestnut Street, Aberdeen, Mississippi; 2) the lease-purchase agreement between Defendant Byars and Dr. Layne and all proceeds from such agreement in favor of Defendant Byars; 3) all other rental income in favor of Defendant Byars generated by the property at 808 S. Chestnut from tenants other than Dr. Chester Layne since May 31, 1995.

¶17. This is sufficient to charge Byars with a violation of § 25-4-105(1) which proscribes a public servant from using "his official position to obtain pecuniary benefit for himself other than the compensation provided for by law, or to obtain pecuniary benefit for any relative or any business with which he is associated."

¶18. Because the trial court based its dismissal on the conclusion that Byars was not a contractor, etc., the court never reached the question of whether Byars used his official position to obtain pecuniary benefit for himself. Since this is necessarily a fact specific inquiry, dismissal of the case via a Rule 12(b)(6) motion was error.

## E.

¶19. Dismissal of the count alleging that Byars used information gained in the course of his employment which resulted in a pecuniary benefit to him under the ethics in government laws was also error. A necessary element of § 25-4-105(5) is that the information has not been communicated to the public or is not public information. Byars contends that all of the information he used with regard to Dr. Layne's loan was already public. The minutes of the meeting in which the Board of Aldermen voted to loan UDAG funds to Dr. Layne, Byars argues, were public record. However, the complaint does not allege that Byars used the information that Layne had been voted a loan by the Board of Aldermen; rather, the complaint is premised on the allegation that Byars was privy to confidential information which he used to assist Layne in getting a loan. At this stage of the proceedings, it is impossible to tell whether this is true. Suffice it to say that if the allegations in the complaint are true, then the State may have a case against Byars.

## F.

¶20. Finally, the dismissal of USF&G from the suit was premature as well. The State points out that, while the public official's bond continuation certificate for Byars from 1992 through October 1, 1995, contains a typed notation "utilities manager", the continuation certificate for October 1, 1995, through October 1, 1998, contains no such limitation. Moreover, Miss. Code Ann. § 21-15-38 (1990) requires all city

managers to provide a bond in an amount of at least $50,000 before beginning to discharge the duties of their office. Miss. Code Ann. § 25-1-15(3)(1999) requires that the bonds shall be binding and valid no matter the form. This being so, this is a case involving some ambiguity as to whether there was coverage of Byars in his capacity as city manager. We have held that where there are substantial ambiguities in contracts, they may not be resolved summarily. *Busching v. Griffin,* 465 So.2d 1037, 1042 (Miss. 1985) (language of land option contract, which failed to specify method of payment of stated purchase price, contained substantial ambiguities and action for specific performance could not be resolved on motion to dismiss for failure to state a cause of action upon which relief could be granted); *Biggers v. Fox*, 456 So.2d 761, 763 (Miss.1984) (summary judgment improper where there were unresolved questions of law and fact as to whether sum paid by defendant upon dissolution of partnership was an accord and satisfaction as to the prior fee division agreement). Therefore, the trial court erred in dismissing the complaint as to USF&G.

## IV.

¶21. As demonstrated above, while the motion to dismiss should have been granted as to the count charging Byars with having a material financial interest in a contractor with the City (Miss. Code Ann. § 25-4-105(3)(a)), the rest of the complaint states a cause of action against Byars and USF&G. Therefore, we affirm the judgment of the Monroe County Circuit Court to the extent that it dismissed that portion of the complaint alleging a violation of Miss. Code Ann. § 24-5-105(3)(a)(1999). We reverse the judgment in part to the extent that it dismissed the remainder of the complaint, and we remand this case to the trial court for further proceedings consistent with this opinion.

¶22. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND WALLER, JJ. MILLS AND DIAZ, JJ., NOT PARTICIPATING.**

**COBB, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23. I agree that it was error to grant the motion to dismiss; and therefore, I agree that this case should be remanded to the trial court for further proceedings. I do not agree, however, that we should adopt the majority's narrow definition of "contractor" as being "one who performs a service for another." I believe the broader definition - "one who is a party to a contract" - which the majority rejects, is the better definition to adopt for deciding ethical questions. No harm would be done by adopting this broader definition. It would simply close an obvious loophole and provide an additional safeguard against unethical conduct not only by public officials and employees but also by businesses which enter into contracts with governmental entities. I would adopt and apply the broader definition of the term "contractor" and reverse and remand on all issues.

**SMITH AND WALLER, JJ., JOIN THIS OPINION.**